UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

Terry BATTLE

    v.

UNITED STATES OF AMERICA

Crim. No. 07-900 (KM)

OPINION & ORDER

**MCNULTY, District Judge**

    The defendant, Terry Battle, is serving a 30-year sentence as a career offender. Having unsuccessfully attempted by various means to vacate or modify that sentence, he now moves for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), primarily citing the COVID-19 pandemic and the danger to himself while incarcerated. (DE 109)[1]

### I.    BACKGROUND

    Mr. Battle was convicted by a jury of conspiring to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846. (DE 41) He was designated a career offender under U.S.S.G. § 4B1.1, based on eight prior felony narcotics convictions. On December 8, 2008, District Judge Cavanaugh imposed a sentence of 360 months' imprisonment, the Guideline minimum. (DE 67)[2]

    Mr. Battle appealed, asserting *inter alia* that his criminal history was overrepresented and that the court should have granted a downward departure. By Judgment and Opinion filed January 4, 2012, the U.S. Court of

---

[1] Unless otherwise specified, "DE __" refers to docket entry numbers in this case, Crim. No. 07-900. Also relevant is the docket for an earlier § 2255 motion, Civ. No. 13-2024.

[2] At the time of trial and sentence, the presiding judge was Hon. Dennis M. Cavanaugh. Judge Cavanaugh retired in 2014, and after two interim reassignments, this matter was assigned to me. (DE 100)

Appeals for the Third Circuit denied Mr. Battle's direct appeal from his conviction. (DE 83, 84)

The following decisions on motions for post-conviction relief are relevant:

- By Order and Opinion filed March 26, 2014, District Judge Faith S. Hochberg denied Mr. Battle's motion pursuant to 28 U.S.C. § 2255 on certain claims of ineffective assistance of counsel in relation to the imposition of his career-offender sentence. (Civ. No. 13-2024, DE 10, 11)
- After the assignment of new counsel and an evidentiary hearing, by Order and Opinion filed March 14, 2016, District Judge Jose L. Linares denied the remaining claim of ineffective assistance of counsel, relating to counsel's advice in connection with the rejection of a guilty plea deal, which could have avoided the career-offender classification. (Civ. No. 13-2024, DE 40, 41)
- By Order dated August 29, 2016 (DE 103), I denied Mr. Battle's motion for reduction of his career-offender sentence based on subsequent amendments to the Sentencing Guidelines, pursuant to 18 U.S.C. § 3582(c)(2). In my order I afforded him the opportunity to make an amended submission identifying any such subsequent amendment.
- By Opinion and Order dated December 7, 2018, I denied Mr. Battle's petition for a writ of *audita querula,* in which he again challenged his career offender designation. I held, among other things, that this petition was equivalent to an unauthorized second or successive § 2255 motion. In the alternative, I rejected his contentions that his prior state court convictions did not constitute eligible drug trafficking offenses for purposes of the Career Offender guideline, U.S.S.G. § 4B1.1.

Now before the Court is Mr. Battle's motion for a reduction of sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (DE 109) The government

has filed a response in two parts. (DE 114, 116) Defense counsel has filed a reply. (DE 117)[3]

## I. LEGAL STANDARDS

Once a term of imprisonment has been imposed, the Court may modify it only under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797–98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)). As relevant here, § 3582(c)(1) provides as follows:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> > (i) extraordinary and compelling reasons warrant such a reduction; [. . .]
>
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*See also United States v. Pawlowski*, 967 F.3d 327, 329–30 (3d Cir. 2020). The United States Sentencing Commission has promulgated a policy statement that, in relevant part, allows a court to grant compassionate release or a sentence reduction where: (i) extraordinary and compelling reasons warrant a reduction in a defendant's sentence; (ii) the defendant is not a danger to the safety of others or to the community; and (iii) release from custody complies

---

[3]   Mr. Battle filed his motion pro se, but counsel entered his appearance thereafter (DE 112), and filed a reply submission (DE 117).

with the section 3553(a) factors, to the extent applicable. U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 (U.S. SENTENCING COMM'N 2018).

The Sentencing Commission issued a policy statement defining certain circumstances that qualify as extraordinary and compelling. U.S.S.G. § 1B1.13, Application Note 1(A)–(D).[4] That policy statement was enacted at a time when only the BOP could move for compassionate release, however, and has not been amended since the enactment of the First Step Act. In prior cases, I accepted the emerging near-consensus that where a defendant makes a motion under the First Step Act, the court is not bound by that application note. The U.S. Court of Appeals for the Third Circuit, in a precedential decision, has now joined that consensus:

> The first issue is whether the District Court was bound by the Commission's policy statement. We conclude that it was not.
>
> As the District Court noted, the text of the policy statement explicitly limits its application to Bureau-initiated motions. Thus, according to its plain language, the existing policy statement is not applicable—and not binding—for courts considering prisoner-initiated motions. In reaching this conclusion, we align with nearly every circuit court to consider the issue. *See United States v. Brooker*, 976 F.3d 228, 235 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020); *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021); *United States v. Elias*, 984 F.3d 516, 519–20 (6th Cir. 2021); *United States v. Gunn*, 980 F.3d 1178,

---

[4] The application note lists three specific circumstances that qualify as extraordinary and compelling. Generally speaking, the enumerated circumstances include: (i) a terminal illness or a serious medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover; (ii) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; or (iii) certain family circumstances exist where the defendant would be the only available caregiver for his or her minor child, spouse, or registered partner. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). In addition, the Sentencing Commission included a catchall provision, which provides that "other reasons" may be sufficient if "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in [the enumerated] subdivisions." *Id.*, Application Note 1(D).

4

1180–81 (7th Cir. 2020); *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021); *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021); *United States v. Long*, 997 F.3d 342, 355 (D.C. Cir. 2021). *But see United States v. Bryant*, 996 F.3d 1243, 1247–48 (11th Cir. 2021).

*United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021).

Thus the Guidelines policy statement does not limit what this Court, within its reasonable discretion, may find to be "extraordinary and compelling." Still, it remains a relevant and valuable guide, and is properly considered by a district court:

> The [district] court correctly recognized that although the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons. "It is a commonplace of statutory interpretation that 'Congress legislates against the backdrop of existing law.'" *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, –– U.S. ––, 139 S. Ct. 1881, 1890, 204 L.Ed.2d 165 (2019) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 398 n.3, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013)). Because Congress reenacted the compassionate-release statute without any alterations to the phrase "extraordinary and compelling reasons," it was reasonable for the court to conclude that the phrase largely retained the meaning it had under the previous version of the statute. *See United States v. Johnman*, 948 F.3d 612, 619 (3d Cir. 2020) . . . .

*Andrews*, 12 F.4th at 260.

## II. ANALYSIS

### A. Exhaustion of remedies

Before proceeding to the merits of a motion for compassionate release, a defendant must meet § 3582(c)(1)(A)'s exhaustion requirement, which requires either that that the defendant has exhausted all administrative remedies, or that, since the submission of a request to the warden, 30 days have passed without a decision being rendered. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Cases have split as to whether the exhaustion requirement is so fine-grained as to require "issue exhaustion." On one hand, it seems fair to require

5

a prisoner to have alerted the BOP to the particular issues he would raise in a subsequent compassionate release motion. *See United States v. McNair*, 481 F. Supp. 3d 362 (D.N.J. 2020). On the other hand, the BOP proceeding is an inquisitorial one, in which every effort should be made to discern the basis of what may be an inexpert, *pro se* presentation. *See United States v. Herrera-Genao*, No. CR 07-454, 2021 WL 2451820, at *3 (D.N.J. June 16, 2021).

While the government initially raised "issue exhaustion" as a bar, it appears that Mr. Battle returned to the BOP and filed an application that contained all of his current issues. The government now concedes that he has exhausted his remedies before the BOP. (DE 116 at 2.)

### B.  Compassionate Release

#### 1. Extraordinary and compelling circumstances

Mr. Battle's First Step Act application for reduction of sentence covers a few subjects, but is primarily based on the danger to his health if he should contract a COVID-19 infection while in the institutional setting of FCI Ashland. (*See* Motion (DE 109) at 2 ("I am seeking release due to the current Pandemic of the Coronavirus/Covid-19.") My review of the petition and the records supplied to the Court yields the conclusion that there are no extraordinary and compelling circumstances here.

Logically, any assessment of extraordinary circumstances arising from the COVID-19 pandemic must consider (a) the likelihood that a COVID infection would have severe consequences for this particular person, and (b) the more general danger of infection at the institution where the person is incarcerated.

Courts, including this one, have routinely looked to the Centers for Disease Control ("CDC") for guidance as to conditions that place a person at particular risk of serious consequences from a COVID-19 infection. *See People With Certain Medical Conditions*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html  (updated as of Dec. 14, 2021) (cited herein as

"CDC List"). "Older adults," *i.e.,* those over age 65, are far more likely than young persons to suffer serious consequences, and account for some 80% of COVID deaths. *Id.* Certain listed medical conditions are also recognized as risk factors. These, in abbreviated form, are Cancer, Chronic kidney disease, Chronic liver disease, Chronic lung disease (including "Asthma, if it's moderate to severe"), Dementia, Diabetes, Down syndrome, Heart conditions, HIV infection, Immunocompromised state, Mental health conditions, Overweight and obesity, Pregnancy, Sickle cell disease, Smoking, Solid organ or blood stem cell transplant, Stroke, Substance use disorders, and Tuberculosis. *Id.*

Mr. Battle is approximately 53 years old. He states that African American males have a higher infection rate. He refers to a "family history of hypertension and heart disease that makes me an excellent candidate to be infected with the COVID-19 virus." (Motion at 7–8)

Mr. Battle also states that he takes hydrochorozine "to help prevent me from becoming diabetic." *Id.* That is a medication for high blood pressure. Hypertension is listed as a condition that "possibly" increases risk. *See* CDC List, "Heart Disease." Prison medical records submitted by the government establish that Mr. Battle's hypertension is regularly monitored and well controlled by medication. (DE 116-4, 5, 6, 7)

Nothing about these conditions is extraordinary; they do not expose Mr. Battle to an unusual risk of severe consequences from a COVID-19 infection. *See generally United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020) (in pre-vaccine era, denying compassionate release application of inmate who had hypertensive heart disease, COPD, sleep apnea, and only one lung)

I move on to consider the likelihood of contracting COVID-19, and, in particular, whether the prison environment creates a particular risk that Mr. Battle will suffer serious consequences from a COVID infection. As Mr. Battle notes, the pandemic caught the prison system, as it caught society, on the back foot, it took some time to bring cases under control. The prison system instituted extraordinary containment measures, which had some effect.

7

https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp In 2021, of course, the vaccine became available.

FCI Ashland is a low-security institution that houses approximately 1225 inmates, including 151 inmates at an adjacent camp facility. https://www.bop.gov/locations/institutions/ash/. Current and cumulative figures for COVID-19 infections are as follows:

| Inmates Positive | Staff Positive | Inmate Deaths | Staff Deaths | Inmates Recovered | Staff Recovered |
|---|---|---|---|---|---|
| 3 | 1 | 6 | 0 | 348 | 157 |

https://www.bop.gov/coronavirus/ To be sure, these figures reveal that over the past two years there have been significant positive COVID test results among the inmates and staff, although not dramatically out of alignment with rates in the community at large. Out of some 1225 inmates (not accounting for turnover), there were 6 fatal cases—a rate of approximately .5%.[5] Those deaths are tragic and regrettable. Still, the current positive test rate is low, consisting of only 3 cases.

The motion does not update the court as to Mr. Battle's vaccine status. I do note that BOP has made the vaccine fully available. At FCI Ashland, BOP reports, there have been some 1100 full vaccinations of inmates. https://www.bop.gov/coronavirus/ The vaccines are highly effective at preventing infection and, when breakthrough infections occur, at reducing the severity of symptoms. *See* The Possibility of COVID-19 after Vaccination: Breakthrough Infections, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html; (updated Dec. 17, 2021). The wide availability of vaccines tends to render the COVID-19 risk less extraordinary or compelling.

Mr. Battle and his counsel have taken advantage of the compassionate release motion to argue, again, that subsequent changes in the law have rendered his sentence under the Career Offender provision illegal. This motion

---

[5]   Presumably, these were concentrated in the pre-vaccine era, although the cumulative figures do not break down the fatalities by date.

is not a proper vehicle for what amounts to a serial § 2255 motion:

> [T]o the extent that Defendant mounts post-judgment collateral attacks on his sentence and seeks to vacate, set aide, or correct his sentence, the proper venue is a habeas petition under 28 U.S.C. § 2255. See *United States v. Henderson*, 858 F. App'x 466, 469 (3d Cir. 2021) (stating that a claim to vacate a defendant's sentence can be raised only in a § 2255 motion). This is because a compassionate release under § 3582(c)(1)(A) "provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity." *United States v. Handerhan*, 789 F. App'x 924, 926 (3d Cir. 2019). Section 3582(c)(1)(A) certainly does not provide an end-run for defendants who are subject to the restrictions of § 2255 motions to collaterally attack their sentences. *See id.*

*United States v. Craft,* No. CR 18-0085, 2021 WL 5448788, at *5 (D.N.J. Nov. 22, 2021). As advised earlier, in order to bring a second or successive § 2255 challenge to the validity of his sentence, Mr. Battle would have to obtain a certification from the Court of Appeals after making a showing of new evidence or that subsequent case law made retroactive by the U.S. Supreme Court.

Finally, Mr. Battle points to his efforts at rehabilitation and reform while incarcerated. These include the attainment of degrees in theology, participation in youth outreach programs, and the like. These efforts are admirable, but not so extraordinary as to support the drastic reduction in sentence that Mr. Battle seeks.

Mr. Battle is at risk of COVID-19 infection while incarcerated, but the risk is not rendered extraordinary by any medical condition. His sentence is a long one, but is not out of line with his offense or his status as a Career Offender, and it has been upheld. His efforts at rehabilitation are real, but not extraordinary. In short, I do not find that his circumstances are extraordinary and compelling.

### 2. 18 U.S.C. § 3553(a) Factors

Even if the circumstances were extraordinary, consideration of the factors under 18 U.S.C. § 3553(a) would weigh against an order of release.

The nature of the offense is serious, involving the defendant's brokering

of the sale of some six kilograms of cocaine.

Mr. Battle's criminal record encompasses some fourteen felonies, eight of them drug trafficking offenses. Judge Cavanaugh noted that history in the course of imposing sentence:

> Mr. Battle has spent his entire adult life committing crimes. Between 1985 through 2006, he was arrested a total of 20 times, including arrests for robbery, criminal trespass, and driving while intoxicated, as well as controlled substance offenses. He's been convicted of a total of 14 felony offenses, for which he has spent a significant amount of time in jail or on probation. His last conviction was in March 2007 for a 2006 arrest for a controlled substance offense. It was while on probation for that offense that he was arrested for the instant offense.

(Sentencing Tr. 15:13–23).  His criminal history points easily placed him in Criminal History Category VI, and then some, even without the effect of the Career Offender Guideline. He did meet the criteria for career offender status under the Guidelines, and his imprisonment range was 360 months to life. He received the guideline minimum sentence of 360 months, with no downward departure or variance.

The sentence imposed explicitly reflected the 3553(a) factors, such as just punishment, deterrence, respect for the law, and protection of the public:

> It's evident to me that if Mr. Battle continues out in the general public, in society, in all likelihood, it seems that he will continue on his criminal ways. There is nothing that's occurred thus far in his life that has slowed that down. He goes to jail, he gets out, he commits another offense, gets caught, goes to jail, gets out, commits another offense, and this just goes on and on. While certainly it's somewhat of an anomaly since he does seem to have some very decent characteristics in his assisting with the church assisting with his sister's family, trying to maintain some employment, it just seems that he cannot and will not abide by the law and not go out and commit further crimes.  I believe also that I think to deter others, he has to receive a significant sentence, but mostly because of respect for the law and the recidivism problem that he has.

(Sentencing Tr. at 22:1-16.)

While Mr. Battle has made strides toward rehabilitation, there is still a price to be paid for his criminal career. He still has a very significant portion of his sentence left to serve; his presumptive release date, with good time credit, is in 2033.

Even if Mr. Battle's circumstances were extraordinary and compelling, which I do not find to be the case, compassionate release would be denied because it would defeat the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).[6]

## ORDER

**IT IS THEREFORE** this 7th day of March, 2022,

**ORDERED** that the petition for compassionate release under the First Step Act (DE 109) is DENIED.

To the extent that this order may be deemed a decision on a motion for relief under 28 U.S.C. § 2255, I find that there is no substantial showing of district court jurisdiction, let alone denial of a constitutional right, and deny a certificate of appealability. *See* 28 U.S.C. § 2253.

The clerk shall send a copy of this opinion and order to the defendant/petitioner, Mr. Battle, by regular first-class mail.

/s/ Kevin McNulty
_____
**KEVIN MCNULTY, U.S.D.J.**

---

[6] The motion, to the extent it may be seeking a transfer to home confinement, must be denied. The Court has no authority to grant such relief, which is reserved to the BOP under 18 U.S.C. § 3624(c)(2). *See United States v. Voda*, 994 F.2d 149, 151–52 (5th Cir. 1993); *Aigebkaen v. Warden*, No. 20-5732, 2020 WL 6883438, at *4 (D.N.J. Nov. 24, 2020) ("Pre-release placement decisions, such as transfers to home confinement, are committed to the BOP's sole discretion.").